# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 25-2076V**

| | |
|---|---|
| THELMA TALAMANTES,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 13, 2026 |

*Gregory T. Bryant, Bryant Law Group PC, Raleigh, NC, for Petitioner.*

*Kimberly Shubert Davey, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT**[1]

On December 8, 2025, Thelma Talamantes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on September 20, 2024. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent has filed his Rule 4(c) Report setting forth several objections (ECF No. 14). For the reasons set forth below, I determine that the record preponderantly

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

supports a finding that Petitioner likely experienced the residual effects of her condition for more than six months; that her pre-vaccination history of right shoulder pain likely would not explain her post-vaccination symptoms; and that her pain originated and primarily occurred in her vaccinated shoulder.

## I. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is “consistent, clear, cogent, and compelling.” *Camery v. Sec’y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec’y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec’y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec’y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other “relevant and reliable evidence contained in the record.” *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec’y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master’s discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II. Findings of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent’s Rule 4(c) Report, and additional evidence filed. Specifically, I highlight the following evidence:

*Pre-vaccination records*

- Petitioner saw an orthopedist on June 12, 2023, about 15 months prior to vaccination, reporting that in March of that year she had fallen and injured her right bicep, and now her “whole right arm” hurt. Ex. 6 at 52. The pain mostly stayed in her bicep, but would sometimes “shoot[] down her arm.” *Id*. On examination, her right shoulder active range of motion (“ROM”) was 160 degrees in forward flexion, with positive Neer and Hawkins impingement signs. *Id*. at 52-53. Petitioner was assessed with right shoulder bursitis and cervicalgia, and given a steroid injection. *Id*. at 53-54.
- On June 15, 2023, Petitioner underwent a physical therapy (“PT”) evaluation of her right arm and shoulder, explaining that she had fallen in the shower and injured her arm two months earlier. Ex. 7 at 61. She reported experiencing right shoulder pain that extended to her right elbow since her fall. *Id*. at 62. On examination, she exhibited reduced active ROM in her right shoulder (compared to the left) in flexion and external rotation, and positive results on the empty can and painful arc tests. *Id*. at 64.

- Petitioner continued PT until August 2, 2023, at which time she reported that her symptoms were 90% improved, though she continued to experience right elbow pain she rated three out of ten. Ex. 7 at 143. Her pain was no longer constant, and she no longer felt pain shooting down her arm. *Id*. The therapist noted that she had made "significant improvement" in pain, ROM, and strength, and discharged Petitioner with instructions to continue exercises at home. *Id*. at 147.

- On October 9, 2023 – just under a year before vaccination – Petitioner told her primary care provider that her shoulder was "feeling better but still having some pain, was told to go back for MRI." Ex. 3 at 109. On examination, she was tender to palpation on her posterolateral right shoulder, with full ROM. *Id*. at 112.

- On March 6, June 19, and July 10, 2024, Petitioner saw her orthopedist for knee and hip pain. Ex. 6 at 24, 39, 47. The records do not indicate that her shoulder was discussed or examined. *Id*. Petitioner also attended physical therapy for hip pain in the summer of 2024, without mentioning her shoulder. Ex. 6 at 12-20.

- Between December 2023 and her receipt of the subject vaccine in September 2024, Petitioner attended multiple appointments for routine examinations, cardiology consultations, treatment of acute illnesses, and hospitalization follow-up appointments. Ex. 3 at 24-98. These records do not mention her right shoulder. The closest they come to addressing her shoulder is a July 15, 2024 examination noting that she exhibited tenderness to palpation on her right thoracic paraspinal muscles and trapezius – muscles of the back that are near the shoulder – and equal strength in both upper extremities (Ex. 3 at 38-42).

*Vaccination and subsequent records and other evidence*

- On September 20, 2024.Petitioner saw her PCP for a sore throat that "[s]ometimes radiates towards shoulder." Ex. 2 at 71. On examination, she was found to exhibit normal ROM. *Id*. at 73. She now received a flu vaccine in her right deltoid. *Id.* at 74.

- Three days later (September 23, 2024), Petitioner called her PCP reporting that her right arm was "very painful" and she had "difficulty moving" it on the day she received the vaccine. Two days later, she woke up with sharp pain in her right arm, and now she could only move and lift it with difficulty and pain. Ex. 2 at 67. She experienced pain from her shoulder to her elbow, and rated her pain seven out of ten. *Id*. The same day, Petitioner was seen in her PCP's office. *Id*. at 58. On examination, she exhibited normal ROM and right upper arm tenderness without any appreciable edema or erythema. *Id*. at 60. She was given oral prednisone and instructed to use ice as needed. *Id*. at 60.

- On October 7, 2024, Petitioner saw an orthopedist for right shoulder pain that had been present since vaccination. Ex. 7 at 160. She felt pain on the side of her shoulder going down her arm, which worsened with movement. *Id*. at 163. She rated her pain ten out of ten. *Id*. On examination, her right shoulder ROM was normal. *Id*. at 164. She was given a steroid injection and referred to PT. *Id*. at 161, 250.

- Petitioner underwent a PT evaluation on October 16, 2024. Ex. 7 at 169. She reported having shoulder pain (which had healed) a couple of years earlier after falling in the shower. In September 2024, she had received a flu vaccine "in the wrong spot (too high)," followed by "excruciating pain" and stiffness that "immobilized" her entire arm an hour later. *Id*. A steroid injection had provided substantial pain relief, though she continued waking up at night at times and still felt pain with movement. *Id*. She rated her pain five out of ten, ranging from five at best to eight at worst. *Id*. at 170. On examination, her right shoulder active ROM in flexion and abduction was reduced compared to her left shoulder. *Id*. at 171. She was assessed with decreased ROM and strength, with her signs and symptoms being "consistent with acute right shoulder pain due to SIRVA." *Id*.

- Petitioner returned to the orthopedist on November 20, 2024 for "right shoulder pain consistent with SIRVA," reporting that PT and the steroid injection she received at her prior appointment had resulted in a 90% improvement in her symptoms. Ex. 8 at 5. She continued to experience soreness, as well as intermittent numbness in her fifth finger. *Id*. On examination, she exhibited tenderness in the bicipital groove and positive results on the Speed's test. *Id*. at 5. Her symptoms were noted to be "consistent with bicep[s] tendonitis" and SIRVA, and she was given anti-inflammatory medication. *Id*. at 6.

- Petitioner was discharged from PT on December 18, 2024, after attending a total of 16 sessions. Ex. 7 at 169-235. On December 18th, Petitioner exhibited persistent weakness and felt the steroid injection was wearing off. *Id*. The therapist discharged her with instructions to return to the orthopedist. *Id*.

- Petitioner returned to the orthopedist on December 30, 2024, reporting that six weeks of PT (along with the steroid injection and medication) had improved her symptoms until a few days prior, when she began noticing severe shoulder pain with movement. Ex. 8 at 61. An MRI was ordered. *Id*.

- On January 9, 2025, Petitioner saw her orthopedist to review the MRI. Ex. 8 at 87. The orthopedist assessed her with impingement syndrome and labral tearing. *Id*. After discussing treatment options, Petitioner elected to continue PT and increase her medication dosage. *Id*.

- Petitioner returned to PT on January 15, 2025. Ex. 8 at 32. She described "overwhelming" pain that made her unable to hold a cup of coffee and sometimes woke her. *Id*. She also described a "needle" like pain from her shoulder to her elbow. *Id*.
- On February 19, 2025, Petitioner followed up with her orthopedist. Ex. 8 at 52. PT and an increased medication dosage had improved her symptoms, which she described as 75% improved. *Id*. at 54. She no longer felt pain with ROM, and did not want to consider surgery or additional PT after she finished her current PT program. *Id*. She would continue taking anti-inflammatory medication. *Id*.
- The following week (February 26, 2025) – approximately five months and one week after the onset of her shoulder pain – Petitioner was discharged from PT. Ex. 7 at 311. She was now able to move through all planes of ROM, but continued to experience pain, especially with internal rotation and extension. *Id*. She was discharged due to completion of her plan of care, with instructions to continue exercises at home. *Id*.
- Petitioner has not filed an affidavit or declaration as required by § 11(c)(1) of the Vaccine Act. However, she has filed an unsworn statement stating that no civil action has been filed, nor has she received compensation in the form of an award or settlement, for her vaccine-related injury. Ex. 9.

*Severity Requirement*

Respondent asserts that Petitioner has not satisfied the statutory severity requirement. Respondent's Rule 4(c) Report, ECF No. 14, at *6-7. Respondent points out that Petitioner's last treatment for her shoulder was on February 26, 2025, less than six months after the onset of her symptoms. *Id*. In March 2025 – very close to the six-month mark – Petitioner saw her primary care physician and reported various chronic conditions, but did not mention any shoulder concerns. *Id*.

The aforementioned medical records and testimonial evidence, however, reviewed in their totality, establish that the residual effects of Petitioner's injury likely persisted beyond six months. The statutory severity requirement does not require that a claimant continue *treatment* for more than six months, but instead that it be preponderantly established that she experienced the residual effects of her injury for that timeframe. In cases where a petitioner stops seeking care before the six-month mark, evaluation of severity will turn on how close to the six-month mark she last sought treatment, her condition and remaining symptoms at that time, and other factors specific to the individual.

In this case, Petitioner stopped seeking formal treatment approximately three weeks before the six-month mark. At that time, she could move her shoulder through all

planes of motion, but continued to experience pain in doing so. Ex. 7 at 311. A week before that (five months after the onset of her pain), she described her condition as 75% improved, and while Petitioner opted not to continue PT, undergo another steroid injection, or consider surgery, all of these options were discussed – supporting a finding that her orthopedist did not anticipate her condition resolving within a month. Additionally, given that Petitioner's condition had improved only by 75% after months of treatment, more likely than not it did not fully resolve in less than a month. Thus, severity is preponderantly met.

*Prior Right Shoulder Pain*

Respondent also argues that even if Petitioner were found to have satisfied the severity requirement, she still could not substantiate a Table SIRVA claim because she has a documented pre-vaccination history of right shoulder pain. Respondent's Rule 4(c) Report, ECF No. 14, at *8. While this evidence clearly exists, the record does not support the conclusion that these pre-vaccination health concerns explain her post-vaccination symptoms.

Petitioner's pre-vaccination right shoulder condition resulted from a fall, and she sought treatment for this condition for less than two months, at which time her shoulder pain was 90% improved. Ex. 7 at 143. Just under a year before vaccination, she told her PCP that her shoulder was better, although she was still experiencing some pain. Ex. 3 at 109. Thereafter, Petitioner saw her orthopedist, PCP, physical therapist, and other treaters multiple times without complaining of right shoulder pain. It is reasonable to infer from her silence on the matter for nearly a year that her shoulder pain resolved at some point between October 2023 and September 2024.

After vaccination, by contrast, Petitioner experienced immediate and severe pain. She sought care just three days after vaccination, rating her pain seven out of ten. Ex. 2 at 58. That she went from not seeking care for her shoulder for a year pre-vaccination (despite numerous opportunities), to reporting relatively severe pain three days after vaccination, supports a finding that Petitioner's pre-vaccination condition would not explain her symptoms following vaccination.

*Petitioner's Pain was Primarily Limited to her Shoulder*

Finally, Respondent argues that Petitioner has not preponderantly established that her pain was limited to the vaccinated shoulder. ECF No. 14 at *8. But this issue also can be resolved in favor of Petitioner.

I have previously found that references to symptoms originating in a claimant's shoulder and resulting in incidental symptoms elsewhere do not necessarily prevent

satisfaction of this SIRVA element. *See Valdez v. Sec'y of Health & Human Servs*., No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original).

In this case, Petitioner's pain was primarily located in her right shoulder, the vaccination situs. At times she reported pain going down her arm and into her hands and fingers. But none of these records document pain *originating* in a location other than Petitioner's shoulder. As such, I find that these mentions of pain originating in Petitioner's shoulder and affecting adjacent areas do not disqualify her claim.

**Scheduling Order**

In light of the findings above, Petitioner should file an affidavit or declaration as required by the Vaccine Act, and is also encouraged to promptly serve a demand and engage Respondent in discussions. If efforts to resolve the matter are unsuccessful, further proceedings will be ordered as appropriate.

- **Petitioner shall file, by no later than Monday, August 24, 2026, the following:**
    - **An affidavit or declaration as required by § 11(c)(1) of the Vaccine Act;**
    - **A statement of completion; and**
    - **A status report stating whether and when Petitioner has served a demand.**

- **Respondent shall file, by no later than Monday, August 31, 2026, a status report indicating whether he is willing to engage in tentative discussions concerning settlement or proffer or remains opposed to negotiating at this time; and stating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master